1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| R & L Limited Investments, Inc., an Arizona corporation,<br><br>            Plaintiff,<br><br>vs.<br><br>Cabot Investment Properties, LLC, a Massachusetts limited liability company; Cabot Creekside Acquisition LLC, a Delaware limited liability company; Carlton P. Cabot, a single young man; and Timothy J. Kroll, a single man,<br><br>            Defendant. | No. CV 09-1525-PHX-MHM<br><br>**ORDER** |

Currently before the Court is Defendants' Motion to Compel Arbitration (Doc. 17), Plaintiff's Cross-Motion for a Partial Summary Judgment Declaring Defendants' Arbitration Clauses Unenforceable (Doc. 19), and Defendants' Motion to Transfer Venue (Doc. 31). Having considered these motions and their accompanying papers and determined that oral argument is unnecessary, the Court issues the following Order.

**I.    Background**

Ms. Fay, a 63-year-old retired horse stable manager with an eleventh grade education, was able to retire when she sold horse stable property that she owned through R & L Limited Investments, Inc. ("R & L"). She sought to invest the proceeds from that sale to generate steady monthly income on which she could live in her retirement. Defendants presented the

opportunity for Ms. Fay and R & L to invest. Ms. Fay, through, R & L Investments ("R & L"), placed approximately $250,000 with Defendants in an investment that involved the purchase and sale of a shopping center located in Georgia. (Doc. 6). The investment involved several investors who collectively invested $17.5 million. In return for their investment, the investors were to receive monthly distributions, which appear to have been paid for a little over a year before ceasing in October 2008.[1] (Doc. 20 ¶¶ 47, 49; Doc. 24 ¶¶ 47, 49).

As a result of the ceased distributions, on July 30, 2009, Plaintiff R & L filed a complaint with this Court, asserting claims for violations of the Arizona Securities Act, consumer fraud, negligent misrepresentation, rescission of the Purchase Agreement, and seeking "[a] declaration that the arbitration provisions in the Purchase Agreement and Investment Acknowledgment are unconscionable, invalid, and unenforceable." (Doc. 19 at 5; Doc. 6 at 25).

Defendant moved to compel arbitration based on the arbitration provisions contained in four separate contracts connected with Plaintiff's investment. The following provision was contained in the Purchase Agreement, and it appears that there were very similar provisions in the Tenants in Common Agreement, the Consulting Agreement, and the Call Agreement:

> 8.17.1 <u>ALL CLAIMS SUBJECT TO ARBITRATION</u>
> ANY DISPUTE, CLAIM OR CONTROVERSY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR INTERPRETATION OR VALIDITY THEREOF, INCLUDING THE DETERMINATION OF THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO ARBITRATE, SHALL BE DETERMINED BY ARBITRATION IN BOSTON, MASSACHUSETTS, BEFORE A SOLE ARBITRATOR. THE ARBITRATION SHALL BE ADMINISTERED BY JAMS PURSUANT TO ITS STREAMLINED ARBITRATION RULES AND PROCEDURES. JUDGMENT ON THE

---

[1] Although Defendants dispute which party received the distribution, and whether Ms. Fay (the owner of R & L) was a party to the investment, their objection to these statements does not appear to contest the fact that distributions were paid initially, then ceased. (Doc. 24 ¶¶ 47, 49).

> AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. THE ARBITRATOR SHALL, IN THE AWARD, ALLOCATE THE COSTS OF THE ARBITRATION AND REASONABLE ATTORNEYS' FEES OF THE PREVAILING PARTY, AGAINST THE PARTY THAT DID NOT PREVAIL.

(Doc. 17 at 3).

Responding to Defendants' motion, Plaintiff argues that the arbitration clauses are unconscionable and unenforceable. (Doc. 19). Plaintiff cross-moves for a partial summary judgment declaring Defendants' arbitration clauses unenforceable. (Doc. 19). The parties dispute which law governs, as well as whether the arbitration clauses are procedurally or substantively unconscionable. Each argument is discussed below.

## II. Discussion

### A. Governing Law

Defendants initially argued that this dispute was governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA"). (Doc. 17 at 4). They cited to a number of cases supporting a "liberal federal policy favoring arbitration agreements." (Doc. 17 at 4). However, Defendants also later argued that Georgia law governed because the parties agreed to use Georgia law in the Purchase Agreement. (Doc. 23 at 5).

Plaintiff argued that the FAA's purpose was "to make arbitration agreements as enforceable as other contracts, but not more so." (Doc. 19 at 7, citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n.12 (1967)). Plaintiff points out that since "unconscionability is a generally applicable contract defense, it may be applied to invalidate an arbitration agreement without contravening § 2 of the FAA." (Doc. 19 at 7, citing Ting v. AT & T, 319 F.3d 1126, 1150 n. 15 (9th Cir. 2003)). Plaintiff's arguments appear to be correct; federal courts sitting in diversity must apply the forum state's choice-of-law rules to determine the controlling substantive law. Hoffman v. Citibank (South Dakota), N.A., 546 F.3d 1078, 1082-83 (9th Cir. 2008) (remanding for district court to apply California choice-of-law analysis despite agreement's provision for South Dakota law to govern). Thus, the

Court must apply Arizona's choice-of-law rules to determine the controlling substantive law for whether the arbitration clauses at issue are unconscionable and therefore unenforceable.

Arizona Courts follow the Restatement (Second) of Conflict of Laws (1971 and Supp. 1988) ("Restatement") in determining choice-of-law issues. Swanson v. Image Bank, Inc., 206 Ariz. 264, 268 n.2, 77 P.3d 439, 441 n.2 (2003). The Restatement, as cited in Swanson, provides as follows:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either:
>
> (a) The chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) Application of the law of the chosen state would be contrary to a fundamental policy of a state which has a material greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of the parties.

Swanson, 206 Ariz. at 267, 77 P.2d at 442.

Here, it appears that subsection (b) applies; Arizona's Securities Act, A.R.S. § 44-2000, prohibits and voids choice-of-law provisions that purport to waive the applicability of the Arizona Securities Act:

> Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with this chapter or chapter 13 of this title [Section 44-1991] or of the rules of the commission is void.

This provision appears to have been enacted to prevent sellers of securities from using contractual waivers or choice-of-law provisions to narrow the protection from fraud at which the Arizona Securities Act is aimed. See Richard G. Himelrick, The Importance of Statutory Text: From Scienter to Nonstatutory Defenses Under Arizona Securities Law, 41 Ariz.St.L.J. 1, 84 (Spring 2009); c.f. Hall v. Superior Court, 197 Cal. Rptr. 757, 761 (App. 1983) (observing that nearly identical anti-waiver statute to A.R.S. § 44-2000 is the "cornerstone"

- 4 -

of California's securities statutes designed "to protect the public from fraud and deception in securities transactions"). Arizona has a strong public policy to "protect[] the public from unscrupulous investment promoters." Siporin v. Carrington, 200 Ariz. 97, 103, 23 P.3d 92, 98 (App. 2001).

The anti-fraud provisions of the ASA apply to "transactions within or from this state." A.R.S. § 44-1991(A). Defendants offered the $250,000 investment to R & L and Ms. Fay in Arizona. They also caused the closing documents to be sent to R & L in Arizona, which is where Ms. Fay signed them. Given that Defendants' offer and R & L's purchase occurred "within or from" Arizona, the ASA, including § 44-2000's anti-waiver provision, would appear to apply. A finding that Georgia state law should apply would undercut Arizona's public policy objectives of protecting investors from choice-of-law provisions created by those peddling investments and designed to evade the substantive safeguards that Arizona's legislators have crafted to protect its investing citizenry.

When a contractual choice-of-law provision is not effective, Arizona courts apply "the law of the state having the most significant relationship to the transaction and to the parties. . . ." Landi v. Arkules, 172 Ariz. 126, 130, 835 P.3d 458, 462 (App. 1992). While a variety of other states are tangentially related to the transaction, it appears that Arizona has the most significant relationship to the transaction and the parties. Defendants Carlton Cabot, Timothy Kroll, and Cabot Investment are all residents of Massachusetts, but they sell real estate investments across the United States. The shopping center that was the subject of the investment at issue was in Georgia. Defendant Cabot Acquisition, a Delaware entity, is a wholly-owned subsidiary of Cabot investment. In contrast, the ties to Arizona are strong; Defendants offered the $250,000 investment to R & L and Ms. Fay in Arizona; Defendants communicated the alleged misrepresentations and omissions to R & L and Ms. Fay in Arizona; Ms. Fay signed the closing documents in Arizona; Defendants initiated numerous phone calls concerning the investment with Ms. Fay present in Arizona; Defendants sent reports, letters, and e-mails to R & L and Ms. Fay in Arizona; and Defendants sent R & L's investment distributions for 14 months to a Wells Fargo Bank Account in Scottsdale,

Arizona. (Doc. 29 at 2-3). Therefore, it appears that the state with the most significant relationship to the transaction and the parties is Arizona. Because applying Georgia state law to resolve this issue would undercut Arizona's stated public policy objectives of safeguarding its investors by providing certain nonwaivable statutory protections discussed below, Arizona law will govern the determination of whether the arbitration clauses at issue are unconscionable.

**B.     Unconscionability**

Plaintiff argues that the arbitration clauses cannot be enforced because they are unconscionable. (Doc. 19 at 5-19). Unconscionability includes both "procedural unconscionability," i.e., something wrong in the bargaining process, and "substantive unconscionability," i.e., the contract terms per se. Phoenix Baptist Hosp. & Medical Center, Inc. v. Aiken, 179 Ariz. 289, 293, 877 P.3d 1345, 1349 (App. 1994). The Arizona Supreme Court has held that "a claim of unconscionability can be established with a showing of substantive unconscionability alone, especially in cases involving . . . limitation of remedies. Maxwell v. Fidelity Financial Services, Inc., 184 Ariz. 82, 90, 907 P.3d 51, 59 (1995). Thus, a finding of either substantive unconscionability or procedural unconscionability is sufficient to make the arbitration clauses unenforceable.

**1.     Procedural Unconscionability**

Plaintiff argues that the arbitration clauses are procedurally unconscionable because they are contracts of adhesion. (Doc. 29 at 8). Plaintiff then asserts that "[a] finding of a contract of adhesion is a finding of procedural unconscionability," (Doc. 29 at 8), and cites two cases that analyzed California law: Flores v. Transamerica HomeFirst, Inc., 113 Cal.Rptr.2d 376, 382, (App. 2001); Nagrampa v. Mailcoups, Inc., 469 F.3d 1257, 1282 (9th Cir. 2006)). However, while Arizona courts generally look to California law when interpreting the same or similar statutes, Cooper v. QC Financial Servs., Inc., 503 F. Supp. 2d 1286-87 (D. Ariz. 2007) ("It is well-established among the Arizona courts that if Arizona law has not addressed an issue, we look approvingly to the law of California, especially when interpreting a similar or identical statute."), it does not appear that there is any Arizona law

supporting the assertion that a finding of adhesion equates to a finding of procedural unconscionability. Jones v. General Motors Corp., 640 F. Supp. 2d 1124 (D. Ariz. 2009) (explaining that the "conclusion that the contract is one of adhesion is not, of itself, determinative of enforceability" when analyzing Arizona law).

Moreover, it does not appear appropriate to turn to California law when Arizona courts have already addressed procedural unconscionability. As explained by the Arizona Supreme Court, when analyzing procedural unconscionability, Arizona courts focus on "those factors bearing upon . . . the real and voluntary meeting of the minds of the contracting party: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, [and] whether alterations in the printed terms were possible . . . ." Maxwell v. Fidelity Financial Services, Inc., 184 Ariz. 82, 89, 907 P.2d 51, 58 (1995) (quotation and citation omitted). The Court will therefore use these factors to analyze whether the arbitration clauses were procedurally unconscionable. The fact that a given contract was a contract of adhesion is not itself dispositive, but relates to the factor about "whether alterations in the printed terms were possible."

Plaintiff argues that there was "an overwhelming imbalance in the parties' education (11th grade versus Ivy League business school), relevant business acumen and experience (horse stable manager versus '$2 billion of commercial real estate'), and relative bargaining power." (Doc. 29 at 8). Mr. Cabot was described as having "more than 17 years of commercial real estate experience in brokerage, syndication, acquisition, debt and equity financings, asset management, joint ventures, and development...." (Doc. 19 at 13). Mr. Kroll holds dual degrees from the University of Pennsylvania, including a Bachelors of Science in Economics and Real Estate Finance from Wharton. (Doc. 19 at 14). As of 2007, he had "more than 11 years of commercial real estate experience in acquisitions, asset management, financings, asset backed securitization, dispositions, research, development, and rehabilitation." (Id.).

In addition to the imbalance in the parties' relative financial sophistication, Plaintiff also notes that Ms. Fay did not understand what arbitration meant, the differences between arbitrating and litigating in court, or what arbitration might cost." (Doc. 29 at 9).

The combination of these factors points to a finding of procedural unconscionability, although neither party has explained to the Court's satisfaction at what point a disparity between the parties' sophistication and acumen reaches a "tipping point" and becomes procedurally unconscionable. Defendants attempt to refute the disparity by pointing to a clause in one of the contracts that stated, in all caps, that "BUYER IS A SOPHISTICATED, EXPERIENCED INVESTOR AND WILL RELY ENTIRELY ON ITS OWN REVIEW OF THE PROPERTY." (Doc. 23 at 11). However, if such a recitation could conclusively resolve procedural unconscionability, every contract would contain such a provision, and procedural unconscionability would become a dead letter. Aside from this recitation, Defendants do not provide any support for their assertion that Ms. Fay[2] is in fact sophisticated, except for the fact that "she ran her own business for an extended period of time and in such a successful manner that she was able to retire at the age of 61." (Doc. 23 at 11). While this fact might support that Ms. Fay understood enough about the transaction to have agreed to the investment, it says nothing about her ability to understand the arbitration clauses, which is the issue before the Court.

On balance, the fact that Ms. Fay claims that she did not understand that she could modify the contract, combined with the disparity in the parties' financial sophistication and the fact that Ms. Fay's testimony that she did not understand what the arbitration clause meant leans in favor of a finding of procedural unconscionability, but the Court is not entirely convinced that such a finding is appropriate. The Court will therefore continue its analysis by addressing whether the arbitration clauses are substantively unconscionable.

**2. Substantive Unconscionability**

---

[2] While R & L Investments is technically the Plaintiff in the action, Ms. Fay is the principal of R & L and signed all of the documents on R & L's behalf.

Plaintiff argues that the arbitration clauses are substantively unconscionable because they (a) attempt to waive unwaivable statutory protections, (b) lack mutuality, and (c) require expensive JAMS arbitration in Boston. (Doc. 19 at 14-19). Each argument is addressed below.

### (a) Unwaivable Statutory Protections

Plaintiff argues that the arbitration clause is unconscionable because it attempts to waive an unwaivable statutory protection. (Doc. 19 at 15). The arbitration clause provides that "The arbitrator shall, in the award, allocate all of the costs of the arbitration and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail." (Doc. 19 at 15). Plaintiff points out that the "loser pays" provision contained in the arbitration clause has the effect of discouraging investors from enforcing their rights.

Arizona's Securities Act, A.R.S. § 44-2000, expressly voids any provision that purports to waive the applicability of the Act. Plaintiff points out that one of the Act's key protections for investors is its one-way attorney's fees and costs provision, -2100(A), which provides that a defrauded "purchaser may bring an action . . . to recover the consideration paid for the securities, with interest, taxable court costs, and reasonable attorney fees . . . ." This statute provides that only purchasers are entitled to recover attorneys' fees and costs, not sellers. Klingsat v. Corporate Architects Inc., 2008 WL 2102600 at *4 ¶ 18 (Ariz. App. 2008) (holding that plaintiff purchasers, but not defendants, may recover attorneys' fees and costs under A.R.S. § 44-2001(A)). The Arizona Court of Appeals noted that "the legislature intended to protect purchasers of securities while simultaneously penalizing those who engage in securities fraud," Id. at *4, ¶ 19, by enacting the one-way fees and costs provision.

Defendants respond that the arbitrator will decide whether a fee award is appropriate; however, the arbitration's "loser-pays" fee-shifting provisions appear to be mandatory and do not give the arbitrator any discretion. (Doc. 29 at 10). Defendants also argue that A.R.S. § 44-2001(A) does not prohibit them from recovering fees from Ms. Fay under some other statutory provision, such as A.R.S. § 12-341.01(A), which allows for attorneys' fees in actions which arise out of a contract. However, this assertion ignores the fact that Plaintiff

- 9 -

is not asserting claims based on breach of contract, but claims based on tort law and securities violations. O'Keefe v. Grenke, 170 Ariz. 460, 472-73, 825 P.3d 985, 997-98 (App. 1992) (explaining that "the peripheral involvement of a contract does not require the application of A.R.S. § 12-341.01(A), where the cause of action . . . arose out of a statutory, not contractual obligation"). Even assuming arguendo that § 12-341.01(A) did apply, the decision of whether to award fees under this statute would still be left to the Court's discretion. The discretionary nature of A.R.S. § 12-341.01(A) is materially different than the non-discretionary "loser-pays" provision contained in the arbitration clauses.

Because the arbitration clauses at issue here require the arbitrator to award attorneys' fees to Defendants if they prevail, effectively nullifying the statutory protection provided to investors provided by Arizona's Securities Act, the arbitration clauses are substantively unconscionable. See AT & T Mobility v. Pestano, 2008 WL 682523 at *6 (N.D. Cal. 2008) (declaring arbitration clause in dealer agreement unconscionable in part because fee splitting provision impeded dealer's ability to vindicate unwaivable statutory rights); Graham Oil Co. v. ARCO Prod., 43 F.3d 1244, 1247-48 (9th Cir. 1995) (invalidating arbitration clause that attempted to waive certain statutory rights; "[i]n attempting to strip franchisees of these statutory rights and benefits by means of an arbitration clause included in the franchise agreement, [Defendant] violated the purpose as well as the specific terms of the PMPA [the Petroleum Marketing Practices Act]").

### (b) Lack of Mutuality

As an alternative basis for finding that the arbitration clauses are unconscionable, Plaintiff argues that the Purchasing Agreement and other closing documents give Defendants several remedies, such as self-help, liquidated damages, and equitable relief, while limiting investors to the sole remedy of arbitration. (Doc. 29 at 11). Similarly, Defendants may declare a capital call requiring Ms. Fay and the other investors to contribute cash if Defendants need to pay expenses or refinance the shopping center without resorting to arbitration. According to the formula, if Plaintiff is unable to pay a certain amount (in

1  Plaintiff's case, $11,428) within 15 days of Defendants' demand, Defendants can unilaterally
2  declare the investor to be in default and divest her of her investment. (Doc. 29 at 12).
3        Defendants respond by arguing that the arbitration clauses impose an obligation on
4  both parties to arbitrate, and that they are mutual in this respect. (Doc. 23 at 15). They
5  further argue that the other remedies that Plaintiff asserts lack mutuality pertain to the
6  contract as a whole, not merely the arbitration clauses. (Id.).
7        However, if Defendants have broad-ranging remedies for claims they may have
8  (arbitration plus), while Plaintiff has the sole remedy of arbitration, it is fair to say that the
9  parties lack mutuality with respect to arbitration. In such a setting, there is a clear "overall
10 imbalance in the rights imposed by this bargain," Batory v. Sears, Roebuck and Co., 456 F.
11 Supp. 2d 1137 (D. Ariz. 2006) (holding arbitration unenforceable as substantively
12 unconscionable for lack of mutuality); see also Bencharsky v. Cottman Transmission Sys.,
13 LLC, 625 F.Supp.2d 872, 882 (N.D. Cal. 2008) ("[T]he stronger party reserved greater rights
14 through this non-mutual provision. Accordingly, the Court finds that this provision of the
15 clause is substantively unconscionable."). Accordingly, the lack of mutuality with respect
16 to the arbitration clauses is an alternative basis for holding that they are substantively
17 unconscionable.

### (c) Expense of Arbitration in Boston

19       As a third alternative basis for finding that the arbitration clauses are unconscionable,
20 Plaintiff argues that they impose costs far greater than Plaintiff would bear if she were to file
21 the same complaint in Court. (Doc. 19 at 18). Plaintiff points out that JAMS charges a $400
22 filing fee per party and would require Plaintiff to post a $2,500 retainer to process this case.
23 (Doc. 19 at 18) In addition, the arbitrators available through JAMS' Boston office charge
24 between $450 and $600 per hour. (Id.). In addition to these fees, JAMS charges $400 per
25 party per day for the arbitrator's time. (Id.). Plaintiff further argues that requiring her, as the
26 weaker party, to travel to Boston to pursue her claim less than one mile away from
27 Defendants' corporate headquarters would be substantively unconscionable. (Id.).

Defendants do not dispute these expenses, but merely argue that the cost of arbitration is small in proportion to the amount of money that Plaintiff seeks to recover. (Doc. 23 at 15). However, Defendants do not address Plaintiff's argument that it is unconscionable to require Ms. Fay to travel 2300 miles to arbitrate less than one mile from Defendants' offices. While this point alone might not suffice for a finding that the arbitration clauses are substantively unconscionable, when viewed in combination with the lack of mutuality and the attempt to void Arizona's Security Act nonwaivable statutory protections, it is clear that the arbitration clauses are substantively unconscionable. Accordingly, the Court will deny Defendants' Motion to Compel Arbitration and grant Plaintiff's motion for partial summary judgment declaring Defendants' arbitration clauses unconscionable, unenforceable, and void under A.R.S. §§ 44-2000 and 44-2001(A).

### III.   Defendants' Motion to Transfer Venue

On July 1, 2010, Defendants moved to transfer venue to the United States Court for the District of Massachusetts, Boston Division. Defendants noted that Continental Grain Co. v. Dant & Russell, 118 F.2d 967, 968-69 (9th Cir. 1941), limited a district court's authority to compel arbitration outside the physical jurisdiction of the district. Since the arbitration clause provides that arbitration is to occur in Boston, Massachusetts, Defendants request that the Court transfer venue to the District of Massachusetts to determine the validity of the arbitration clauses.

However, Plaintiff points out that controlling Ninth Circuit precedent requires the Court to decide whether Defendants' arbitration clauses are valid before deciding Defendants' venue motion. (Doc. 32 at 3). Plaintiff cites Textile Unlimited, Inc. v. A..BMH and Co., 240 F.3d 781, 786 (9th Cir. 2001), which held that it would run counter to federal arbitration jurisprudence to "requir[e] a party to contest the very existence of an arbitration agreement in a forum dictated by the disputed arbitration clause . . . ." In Textile Unlimited, the Ninth Circuit affirmed the district court's decision to enjoin an arbitration in Georgia because one party contested that a valid arbitration agreement existed. The appellant argued that the FAA dictates that the only proper venue is the place specified in the arbitration

clause. Id. at 785. The Ninth Circuit rejected this argument, stating that the FAA "does not require that the petition be filed where the contract specified that the arbitration should occur." Id. (citing <u>Continental Grain Co. v. Dant & Russell</u>, 118 F.3d 967, 969 (9th Cir. 1941)). By analogy, it appears proper for this Court to determine whether the arbitration is valid before requiring the parties to resolve this dispute in the location specified by the arbitration clause.

Moreover, Defendants admit that "if the arbitration provision is not enforceable, there is no reason to transfer the case." (Doc. 31 at 8). Having determined that the arbitration clause is not enforceable, the Court hereby denies Defendants' Motion to Transfer Venue as moot.

**Accordingly,**

**IT IS HEREBY ORDERED** denying Defendants' Motion to Compel Arbitration (Doc. 17).

**IT IS FURTHER ORDERED** granting Plaintiff's Cross-Motion for a Partial Summary Judgment Declaring Defendants' Arbitration Clauses Unenforceable (Doc. 19).

**IT IS FURTHER ORDERED** denying Defendants' Motion to Transfer Venue (Doc. 31) as moot.

DATED this 26th day of July, 2010.

_____
Mary H. Murguia
United States District Judge